1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11    JERRY HARRISS,                        Case No. 1:22-cv-01068-CDB (SS)

12              Plaintiff,                   FINDINGS AND RECOMMENDATIONS
                                            TO GRANT PLAINTIFF'S MOTION FOR
13         v.                                SUMMARY JUDGMENT AND TO
                                            REMAND ACTION PURSUANT TO
14    COMMISSIONER OF SOCIAL SECURITY,       SENTENCE FOUR OF 42 U.S.C. §405(g)

15              Defendant.                   (Doc. 12)

16                                           **14-DAY OBJECTION PERIOD**

17                                           Clerk of the Court to Assign District Judge

18

19         Plaintiff Jerry Harriss ("Plaintiff") seeks judicial review of a final decision of the

20   Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for

21   disability benefits under the Social Security Act ("SSA" or "Act"). (Doc. 1). The matter is before

22   the Court on the Administrative Record (Doc. 10, hereinafter "AR") and the parties' briefs (Docs.

23   12, 15), which were submitted without oral argument.[1] Upon review of the record, the undersigned

24   will recommend that Plaintiff's motion be granted and the matter be remanded for further

25   proceedings.

26   ///

27   ─────────────────────
          [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and
28   Local Rule 302(c)(15) (E.D. Cal. 2022).

1    I.    **BACKGROUND**

2        A.    **Administrative Proceedings and ALJ's Decision**

3        On July 27, 2019, Plaintiff filed an application for a period of disability and disability

4    insurance benefits with an alleged onset date of December 17, 2017.  (Doc. 1 ¶ 4); (AR 14).

5    Plaintiff's claim was initially denied on August 27, 2020, and again upon reconsideration on

6    October 23, 2020.  (AR 14).  Plaintiff requested a hearing before an Administrative Law Judge on

7    November 17, 2020.  *Id.*  Lisa Lunsford, the Administrative Law Judge ("ALJ"), held a telephone

8    hearing on April 30, 2021, wherein Plaintiff and impartial vocational expert Carmen Roman both

9    testified.  (AR 14, 32-54).  The ALJ issued an unfavorable decision on July 29, 2021, finding

10   Plaintiff was not disabled.  (AR 11-31).  The Appeals Council denied Plaintiff's request for review

11   on July 27, 2022, rendering the ALJ's decision as the final decision of the Commissioner.  (AR 1-

12   5).  Plaintiff subsequently filed this action seeking judicial review of the ALJ's decision.  (Doc. 1).

13       In the decision, the ALJ considered Plaintiff's claims using the five-step sequential

14   evaluation required by 20 C.F.R. § 404.1520(a).  (AR 16-24).  The ALJ found Plaintiff met the

15   insured status requirements of the Act through December 31, 2022.  (AR 16).  At step one, the ALJ

16   found that Plaintiff had not engaged in substantial gainful activity since December 17, 2017, the

17   alleged onset date.  (AR 17).

18       At step two, the ALJ found that Plaintiff has the following severe impairments: migraine

19   headaches without aura, bronchitis, bipolar disorder, depression, anxiety, adjustment disorder, mild

20   cognitive impairment, posttraumatic stress disorder ("PTSD"), panic disorder, cannabis

21   dependence, and alcohol use in partial remission.  *Id.*  The ALJ determined that Plaintiff's medically

22   determinable impairments ("MDIs") significantly limit his ability to perform basic work activities

23   as required by Social Security Ruling ("SSR") 85-28.  *Id.*  The ALJ noted that though Plaintiff

24   alleged additional impairments, and the record shows he was treated or evaluated for other

25   symptoms and complaints that appear periodically throughout the record, these alleged

26   impairments, considered singly or together, do not constitute severe MDIs as the impairments

27   caused only transient and mild symptoms and limitations, were well controlled with treatment, did

28   not meet the 12-month durational requirement, or are otherwise not adequately supported by the

record.  *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment, or any combination of impairments, that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*  In making this finding, the ALJ considered whether the four broad functional areas of mental functioning listed in the "paragraph B" criteria are satisfied.[2]  The ALJ found that there is insufficient evidence to establish that Plaintiff's ability to learn, recall, or use information to perform work activities independently and on a sustained basis was more seriously limited as his thought process and content were normal upon exam.  (AR 17) (citing Ex. 8F).  The ALJ considered Plaintiff's subjective complaints of difficulty getting along with others and dealing with the public and found that, in contrast, Plaintiff reported living with his family, visiting neighbors, having normal relationships with friends and family, that he could go out alone, and clinical findings do not indicate any significant social function limits.  *Id.* at 18 (citing Exs. 5E, 8F, 15F).  The ALJ found there is insufficient evidence to establish that Plaintiff's ability to relate to and work with supervisors, co-workers, or the public independently and on a sustained basis was more seriously limited.  *Id.*  The ALJ also considered Plaintiff's subjective complaints with completing tasks, concentration, and understanding, and noted that Plaintiff's activities of daily living suggest he could perform at least simple tasks. *Id.* (citing Exs. 5E, 8F).  The ALJ further considered Plaintiff's reports that he had no problems with personal care, he

---

[2] The "paragraph B" criteria evaluate mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme."  (*Id.*).  To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning.  (*Id.*).  An "extreme" limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.  (*Id.*).  A "marked" limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.  (*Id.*).  A "moderate" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "fair."  (*Id.*)  And a "mild" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "slightly limited."  (*Id.*); *see Carlos v. Comm'r of Soc. Sec.*, No. 1:21-cv-00517-SAB, 2023 WL 1868870, at *4 n.7 (E.D. Cal. Feb. 9, 2023).

prepares meals, completes house chores, drives, shops, goes out alone, and takes care of his pets, and has difficulty dealing with the public. *Id.*

The ALJ made the following "paragraph B" findings: As to understanding, remembering or applying information, the ALJ found that Plaintiff has a moderate limitation; as to interacting with others, the ALJ found that Plaintiff has a moderate limitation; as to concentrating, persisting or maintaining pace, the ALJ found that Plaintiff has a moderate limitation; and as to adapting or managing oneself, the ALJ found that Plaintiff has a mild limitation. (AR 17-18). Because these mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the ALJ determined that the "paragraph B" criteria are not satisfied. (AR 18). The ALJ also found that the "paragraph C" criteria[3] were not met because there is insufficient evidence to establish the presence of a medically documented history of Plaintiff's mental disorders over a period of at least two years, and evidence of both medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the mental disorder and marginal adjustment, that is, Plaintiff has minimal capacity to adapt to changes in their environment or to demands that are not already part of the his daily life. *Id.*

Prior to step four, the ALJ found that Plaintiff has the RFC to perform medium work as defined in 20 CFR 404.1567(c) except that he can:

> frequently climb, balance, stoop, kneel, crouch and crawl; have occasional exposure to extreme cold, vibration, fumes, odors, dusts, gases and poor ventilation; and [is] limited to simple tasks with occasional changes in work routine; and no interaction with the public.

(AR 19). In considering Plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence, the ALJ noted she followed the two-step process as set forth in 20 C.F.R. 416.929 and 404.1529 and SSR 16-3p and considered the medical opinion(s) and prior administrative medical finding(s) in accordance with 20 C.F.R. 404.1529, SSR 16-3p, and 404.1520c. *Id.* In this regard, the ALJ noted

---

[3] "Paragraph C," subsection (1) requires a "highly structured setting that is ongoing that diminishes the signs and symptoms of [Plaintiff's] mental disorder." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.04(C)(1). "Paragraph C," subsection (2) requires that Plaintiff "have minimal capacity to adapt to changes in [Plaintiff's] environment or to demands that are not already part of [Plaintiff's] daily life." (*Id.* at subsection (C)(2)).

1    the following from Plaintiff's allegations:

2    [Plaintiff] alleges [that] bipolar, arthritis, COPD, pinched nerve, sciatica, anxiety,
3    and depression prevent him from working. [He] indicates in his function report that
     he cleans and maintains the house, feeds his animals, and cooks. He has no problem
4    with personal care. He prepares simple meals, does laundry and vacuuming, and
5    shops in stores twice a month. However, he reported difficulty with his memory,
     completing tasks, concentration, understanding and getting along with others. Yet
6    he indicated that when he goes outside, he walks, drives, rides in a car or rides a
     bicycle, and he can go out alone. He can pay bills, handle a savings account, and
7    use checkbook and/or money orders.

8    *Id.* (citing Exs. 2E, 5E). The ALJ further noted the following from Plaintiff's testimony:

9    [Plaintiff] testified that he is unable to work now due to his mental capability and
10   physical. He has a lot of problems mentally and physically that affect his ability to
     work. He has memory problems, noting that he often misplaces items such as his
11   keys or glasses. He testified to irritability and anxiety, stating that he stays secluded
     in his home due to depression and anxiety. He mentioned that he would often call
12   in sick to work because of anxiety, stress, and depression. He testified that he
     suffered a head injury that has left him with migraines. He testified that he suffers
13   from bronchitis and shortness of breath. However, he stated that he only has
14   complications when he does not have his inhaler.

15   (AR 19-20).

16       Upon consideration of the evidence, the ALJ found that Plaintiff's medically determinable

17   impairments could reasonably be expected to cause the alleged symptoms, but that his statements

18   concerning the intensity, persistence, and limiting effects of symptoms are not entirely consistent

19   with the medical evidence and other record evidence. (AR 20).

20       The ALJ assessed the record reflects Plaintiff's history of migraines without aura,

21   bronchitis, bipolar, depression, anxiety, adjustment disorder, mild cognitive impairment,

22   posttraumatic stress disorder, panic disorder, cannabis dependence, and alcohol use in partial

23   remission. *Id.* (citing Ex 1F-15F). However, the ALJ determined the weight of the medical

24   evidence does not support Plaintiff's claims of disabling limitations to the degree alleged. *Id.*

25       The ALJ noted that though the record endorses a history of migraine without aura, this

26   condition does not appear to limit his ability to perform work-related activities more significantly

27   than the limitations in the RFC. (AR 20). The ALJ noted in support that: in May 2018, Plaintiff

28   presented for a general checkup at which time he reported a history of cerebral hemorrhage resulting

5

1    in moodiness and bad memory, persistent cough, and migraine without aura, but sensitivity to light

2    and sound; he stated that the migraines occur every three to four months; general examination was

3    within normal limits; diagnostic assessment included chronic migraine without aura, and chronic

4    bronchitis; the following month, he was seen for follow-up on head injury; he stated that he still

5    has word finding problems, anger issues, and noted that he cries easily; and he was referred to

6    neurology for memory deficits and brain trauma issues.  *Id.* (citing Ex. 3F).

7         The ALJ further noted that: following neurological examination on August 7, 2018, Plaintiff

8    was diagnosed with mild cognitive impairment and migraine headache without aura.;

9    recommendations included antidepressants and neuropsychological testing; MRI of the brain taken

10   on August 11, 2018 showed no acute intracranial abnormality; after November 2018, the record is

11   relatively silent regarding headache complaints; in September 2019, he complained of headache;

12   on July 10, 2020, he reported migraine headaches occurring once per week and lasting three or four

13   days at a time, but he states he treats this with over-the-counter Excedrin; during an emergency

14   room visit on July 14, 2020, he denied headache or dizziness; and in January 2021, he reported

15   having a migraine.  *Id.* (citing Exs. 1F, 3F, 10F, 11F, 12F, 14F).

16        In considering Plaintiff's alleged disability due to bronchitis, the ALJ determined that the

17   objective record regarding his condition does not document a severely disabling impairment, noting

18   that: in December 2017, Plaintiff was seen in the emergency room after presenting with cough for

19   one month; physical examination was within normal limits and chest x-ray was normal; chest x-ray

20   taken in June 2018 revealed no acute disease; later that month, he began treatment for chronic

21   bronchitis; when seen in April 2019, his breathing was considered normal; in September 2019, he

22   was treated for flareup of chronic bronchitis; and a progress note from May 2020 shows he denied

23   chest pain or pressure, cough, wheezing and shortness of breath.  (AR 20-21) (citing Exs. 1F, 2F,

24   3F, 9F, 14F).

25        The ALJ considered the mental health evidence in the record, showing Plaintiff's reports of

26   depression and anxiety as well as cannabis and alcohol use.  (AR 21).  The ALJ determined that

27   treatment for these impairments had been somewhat infrequent and conservative, and Plaintiff's

28   symptoms gradually improved with prescribed medications and therapy.  *Id.* (citing Exs. 3F, 4F,

9F, 11F, 13F-15F).  Specifically, the ALJ noted that: a progress note from May 2018 shows Plaintiff was assessed with adjustment disorder with mixes anxiety and depressed mood; during a psychiatric evaluation in May 2019, he reported a history of anger, depression, anxiety, and a history of mood swings; he also reported ongoing cannabis use; on exam, he appeared angry and distracted, minimally communicative, tense, and anxious with rapid, pressured speech; and that diagnoses included bipolar disorder and cannabis dependence.  *Id.* (citing Exs. 3F, 4F).

The ALJ considered Plaintiff's treatment with medication, noting that: in July 2019, Plaintiff stated that his mood was stabilizing with prescribed medications; he noted decreased anxiety and depression and that his sleep was better; when seen in October 2019, he denied problems associated with anger, anxiety, and symptoms of depression were convincingly denied; and that his compliance with medication was "fair."  *Id.* (citing Ex. 4F).

The ALJ considered Plaintiff's complaints of anxiety and panic attacks in February 2020 but found that: objective findings were within normal limits; a progress note from May 2020 showed he reported that he has been doing good, noting that he had been working side jobs; later that month, he reported a history of heavy drinking, noting that he quit four years ago, but that he stated he has an occasional beer; and he also reported occasional marijuana use.  *Id.* (citing Exs. 9F, 13F, 14F).  The ALJ further noted that: in July 2020, Plaintiff was seen in the emergency room for complaint of chest pain at which time he reported he recently started drinking again; a progress note from October 2020 shows he had been more stable since starting Lexapro; he reported less mood swings, anger, irritability, sadness, and racing thoughts as well as less anxiety and apprehension; in January 2021, he reported feeling better with a decreased in symptoms; his mood was better and he had fewer panic attacks; and when seen in April 2021, his mood and panic attacks remained stable on the current medication regimen.  *Id.* (citing Exs. 11F, 15F).

The ALJ determined that the consistency of Plaintiff's allegations regarding the severity of his symptoms and limitations is diminished because those allegations are greater than expected in light of the medical evidence of record, which indicates that Plaintiff "has been seen somewhat infrequently, and he received routine conservative treatment for migraines, bronchitis, and mental impairments."  The ALJ noted that, for instance, Plaintiff's migraines and bronchitis are treated

with standard medications, and Plaintiff has not received botox injections for migraines or other more aggressive interventions for either condition.  The ALJ further noted that Plaintiff's mental health treatment has also been somewhat infrequent and conservative, with occasional lengthy gaps of time between appointments, and conservative treatment of medication and monthly or less frequent therapy.  (AR 21).

The ALJ determined that the objective clinical and exam findings do not support more restrictive functional limitations than assessed in the RFC.  (AR 22).  The ALJ noted that Plaintiff has normal strength and breathing sounds on exams.  The ALJ further noted that the mental status exam findings are mostly normal, do not persuasively support greater mental limitations, and Plaintiff's mental health treatment notes generally document improvement with fewer and less severe symptoms, and at least one provider rated his symptoms as moderate.  *Id.* (citing Exs. 4F, 15F).  The ALJ noted that Plaintiff reported the ability to walk one to two miles per day.  *Id.* (citing Ex. 13F).  The ALJ noted that, not insignificantly, Plaintiff's allegations are not consistent with most of the medical opinions as three physicians found him capable of light or medium work.  *Id.* (citing Exs. 1A, 3A, 10F).

In noting that the statements of Plaintiff's wife, Kristin Collins, in her completed third-party function report are not from an accepted medical expert under the Social Security regulations, the ALJ considered her statements as lay opinions and observations of Plaintiff's functioning.  AR 22 (citing Exs. 6E, 10E).

The ALJ then turned to the medical opinions and prior administrative medical findings of record.  (AR 22-24).  The ALJ found the opinion of consultative examiner Dr. Birgit Siekerkotte somewhat persuasive, noting that the opinion was based on a one-time exam, was not fully consistent with the minimal exam findings, and Dr. Siekerkotte was not familiar with Plaintiff's treatment records, which do not support all of her assessed limitations of Plaintiff.  For example, the ALJ noted that while Plaintiff told Dr. Siekerkotte he has arthritis with pain in his hands, elbows, knees, and shoulders, he also said the pain waxes and wanes, that he treats the pain with Tylenol or ibuprofen over-the-counter, and the record does not indicate that he has been treated for arthritis, and only for migraines and bronchitis.  (AR 22) (citing Exs. 1F-3F; 9F-12F; 14F).

1    The ALJ found the opinion of state agency medical consultant Dr. L. Bobba less persuasive

2    because it is based on a review of less of the evidence, and postural limitations were not adequately

3    considered.  (AR 22-23).  The ALJ found the opinion of state agency medical consultant Dr. M.

4    Mazuryk persuasive because the opinion, which was procured on reconsideration, is supported by

5    a review of much of the medical record (through Ex. 13F) and a reasonable explanation with

6    specific references to the record.  (AR 23) (citing Ex. 14F).  The ALJ further noted that Dr. Mazuryk

7    has disability program knowledge and experience, that the opinion is consistent with the overall

8    record, showing that examination findings have been essentially within normal limits, and that the

9    subsequent medical evidence does not show any significant changes in Plaintiff's conditions

10    warranting greater limitations.  *Id.* (citing Exs. 3F, 11F).

11    The ALJ found the opinion of consultative examiner and psychologist Megan Williamson

12    somewhat persuasive because it is based on a one-time examination of Plaintiff and Dr. Williamson

13    was not familiar with Plaintiff's mental health treatment records, which do not support all of Dr.

14    Williamson's the assessed limitations.  (AR 23).  The ALJ noted that Dr. Williamson, following

15    review of the medical records and the examination of Plaintiff, diagnosed Plaintiff with bipolar

16    disorder, PTSD, ADHD by history, and ruled out unspecified neurocognitive impairment due to a

17    medical condition, alcohol use disorder in partial remission, and cannabis use.  *Id.* (citing Ex. 8F).

18    Dr. Williamson assessed the following limitations: (1) Plaintiff is mildly impaired in the ability to

19    understand, remember, and carry out simple one or two-step job instructions; (2) moderately

20    impaired in the ability to: do detailed and complex instructions; maintain concentration, attention,

21    persistence, and pace; associate with day-to-day work activity including attendance and safety;

22    accept instructions from supervisors; and maintain regular attendance in a workplace and perform

23    work activities on a consistent basis; (3) moderately to severely impaired in the ability to relate and

24    interact with coworkers and the public; and (4) mildly to moderately impaired in the ability to

25    perform work activities without special or additional supervision.  *Id.* (citing Ex. 8F).

26    The ALJ found the opinions of state agency psychological consultants Dr. Pamela Hawkins

27    and Dr. Jo McClain (psychiatrist, on reconsideration) persuasive because the opinions are supported

28    by their review of much of the medical record (through Ex. 13F), a reasonable explanation with

specific references to the record, and the consultants have disability program knowledge and experience. (AR 23). Dr. Hawkins found that Plaintiff's mental impairments caused the following limitations: moderate limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting or managing oneself. *Id.* Dr. Hawkins found that Plaintiff was: capable of understanding and remembering simple instructions and procedures; able to maintain attention and concentration for at least two hours at a time as required to perform simple tasks, sufficiently to complete an eight hour day and a 40 hour week; capable of social interaction with coworkers and supervisors but limited public contact; and able to adapt to routine changes and respond to directions from others; may have difficulty adapting to new situations at work but can adapt to predictable work environments involving simple repetitive tasks. *Id.* (citing Ex. 1A). Dr. McClain affirmed the opinion of Dr. Hawkins. *Id.* The ALJ further noted that subsequent mental health evidence does not show any significant changes in Plaintiff's mental health warranting greater limitations, as more recent treatment notes show his mental health is stable and he has fewer symptoms. *Id.* (citing Ex. 15F). Thus, the ALJ found the opinions of Dr. Hawkins and Dr. McClain consistent with the record as a whole, documenting somewhat infrequent, conservative treatment, mostly normal mental status exams, reports of improvement in symptoms, and no psychiatric hospitalizations or other crises requiring greater intervention. (AR 23-24).

The ALJ concluded that the assessed RFC is supported by the record, including longitudinal medical history showing conservative treatment, the progress notes showing improvement in his symptoms, the medical opinions, and the evidence of his ability to perform basic daily activities. (AR 24).

At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work based on his documented vocational background and the vocational expert's testimony. *Id.* The ALJ found that Plaintiff is a younger individual on the alleged disability onset date pursuant to 20 C.F.R. 404.1563 and has a limited education. (AR 24). The ALJ determined that using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is not disabled regardless

of whether he has transferable job skills.  *Id.* (citing SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.  (AR 24).  The ALJ cited to furniture cleaner, scrap sorter, and laundry worker, based on the testimony of the vocational expert.  (AR 25). The ALJ therefore concluded a finding of "not disabled" was appropriate.  *Id.*

### B. Medical Record and Hearing Testimony

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

## II. LEGAL STANDARD

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  (*Id.* at 1159) (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  (*Id.*) (quotation and citation omitted).  "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  (*Id.*).

The court will review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which she did not rely.  Social Security Act § 205, 42 U.S.C. § 405(g).  In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account

11

1   of an error that is harmless.  (*Id.*).  An error is harmless where it is "inconsequential to the [ALJ's]

2   ultimate nondisability determination."  (*Id*). (quotation and citation omitted).  The party appealing

3   the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

4   *Sanders*, 556 U.S. 396, 409-10 (2009).

5          A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits

6   within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any

7   substantial gainful activity by reason of any medically determinable physical or mental impairment

8   which can be expected to result in death or which has lasted or can be expected to last for a

9   continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the

10  claimant's impairment must be "of such severity that he is not only unable to do his previous

11  work[,] but cannot, considering his age, education, and work experience, engage in any other kind

12  of substantial gainful work which exists in the national economy."  42 U.S.C. §

13  1382c(a)(3)(B).

14         The Commissioner has established a five-step sequential analysis to determine whether a

15  claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the

16  Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant

17  is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not

18  disabled.  20 C.F.R. § 416.920(b).

19         If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step

20  two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R.

21  § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments

22  which significantly limits [his or her] physical or mental ability to do basic work activities," the

23  analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not

24  satisfy this severity threshold, however, the Commissioner must find that the claimant is not

25  disabled.  (*Id.*).

26         At step three, the Commissioner compares the claimant's impairment to impairments

27  recognized by the Commissioner to be so severe as to preclude a person from engaging in

28  substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity," defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)).

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. (*Id.*). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. (*Id.*).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

III.    **ISSUES AND ANALYSIS**

Plaintiff seeks judicial review of the Commissioner's final decision denying his application and asserts the ALJ impermissibly rejected his subjective symptom testimony. (Doc. 12 at 9).

A.    **The Parties' Contentions**

Plaintiff contends the ALJ improperly rejected his subjective symptom testimony by failing

13

to offer any specific, clear and convincing reasons supported by substantial evidence in the record. *Id.* (citing *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986)). Plaintiff argues that the ALJ could not dismiss his testimony "because of a lack of medical records" and that, to the contrary, the "medical record completely supports" his testimony by demonstrating that Plaintiff suffered from mental health issues resulting from his intracranial and extracranial hemorrhage, including memory loss, trouble with behaviors, anxiety and depression, and headaches. *Id.* at 14-15 (citing, *e.g.*, AR 409-612). Plaintiff further argues the ALJ improperly disregarded his subjective symptom testimony based on improvements to his condition as demonstrated in the record, and the ALJ failed to provide any evidence that his condition "had improved to the point that he would be able to work on a sustained fulltime basis." *Id.* at 18-19. Plaintiff contends the ALJ also improperly dismissed his testimony on the grounds that Plaintiff received only conservative treatment for his mental health, including therapy and medication. *Id.* at 20-21.

Defendant generally contends the ALJ properly evaluated Plaintiff's alleged symptoms and sufficiently explained their inconsistency with the record, including with a variety of medical and opinion evidence. (Doc. 15 at 5, 7). Defendant argues the assessed RFC was supported by the medical opinions and prior administrative medical findings the ALJ found persuasive, including that of Dr. Hawkins and Dr. McClain, and the findings of Dr. Mazuryk which were "more persuasive than the [findings] of [Dr. Bobba.]" *Id.* at 7-8. Defendant contends the ALJ properly found that objective examination findings only partially supported Plaintiff's testimony. *Id.* Defendant further argues the ALJ properly found that Plaintiff's conservative and intermittent, yet effective, treatment detracted from his testimony. *Id.* at 10. Lastly, Defendant argues the ALJ properly considered Plaintiff's activities of daily living and third-party report in finding that Plaintiff's testimony regarding his limitations "was contradicted." *Id.* at 11.

### B. Governing Authority

"In step two of the disability determination, an ALJ must determine whether the [plaintiff] has a medically severe impairment or combination of impairments." *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011). A [plaintiff] has a severe impairment when the evidence establishes that an impairment has more than a minimal effect on an individual's ability to perform

14

1  basic work activities. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *Smolen v. Chater*, 80

2  F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. §§ 404.1522(a), 416.922(a) ("An impairment or

3  combination of impairments is not severe if it does not significantly limit your physical or mental

4  ability to do basic work activities."). The regulations define "basic work activities" as "the abilities

5  and aptitudes necessary to do most jobs," which include physical functions such as walking,

6  standing, sitting, pushing, and carrying, and mental functions such as understanding and

7  remembering simple instructions; responding appropriately in a work setting; and dealing with

8  changes in a work setting. 20 C.F.R. §§ 404.1522(b), 416.922(b).

9      The ALJ is responsible for determining credibility,[4] resolving conflicts in medical

10  testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A

11  plaintiff's statements of pain or other symptoms are not conclusive evidence of a physical or mental

12  impairment or disability. 42 U.S.C. § 423(d)(5)(A); *see* SSR 16-3p, 2017 WL 5180304, at *2 ("an

13  individual's statements of symptoms alone are not enough to establish the existence of a physical

14  or mental impairment or disability"); *see also Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007)

15  ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional

16  impairment.") (internal quotation marks and citation omitted); *Molina v. Astrue*, 674 F.3d 1104,

17  1104 (9th Cir. 2012) (same), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

18  Determining whether a plaintiff's testimony regarding subjective pain or symptoms is credible

19  requires the ALJ to engage in a two-step analysis. *Id.* at 1112. The ALJ must first determine if

20  "the [plaintiff] has presented objective medical evidence of an underlying impairment which could

21  reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*,

22  504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not

23  require the plaintiff to show that his impairment could be expected to cause the severity of the

24  symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms.

25

26      [4] SSR 16-3p applies to disability applications heard by the agency on or after March 28,
    2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective
27  symptom evaluation is not "an examination of an individual's character but an endeavor to
    "determine how symptoms limit [the] ability to perform work-related activities." SSR 16-3p, 2017
28  WL 5180304, at *3.

1    *Smolen*, 80 F.3d at 1282.

2        If the first step is met and there is no evidence of malingering, "the ALJ must provide

3    'specific, clear and convincing reasons' for' rejecting the [plaintiff's] testimony." *Treichler v.*

4    *Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (*quoting Smolen*, 80 F.3d at 1281). *See*

5    *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (noting an adverse

6    credibility finding must be based on "clear and convincing reasons"). The ALJ must make findings

7    that support this conclusion, and the findings must be sufficiently specific to allow a reviewing

8    court to conclude the ALJ rejected the plaintiff's testimony on permissible grounds and did not

9    arbitrarily discredit the plaintiff's testimony. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

10       The Ninth Circuit does "not require ALJs to perform a line-by-line exegesis of the

11   [plaintiff's] testimony, nor do they require ALJs to draft dissertations when denying benefits."

12   *Stewart v. Kijakazi*, No. 1:22-cv-00189-ADA-HBK, 2023 WL 4162767, at *5 (E.D. Cal. Jun. 22,

13   2023), *findings and recommendations adopted*, 2023 WL 5109769 (Aug. 8, 2023); *see Record v.*

14   *Kijakazi*, No. 1:22-cv-00495-BAM, 2023 WL 2752097, at *4 (E.D. Cal. Mar. 31, 2023) ("Even if

15   the ALJ's decision is not a model of clarity, where the ALJ's 'path may reasonably be discerned,'

16   the Court will still defer to the ALJ's decision.") (*quoting Wilson v. Berryhill*, 757 Fed. Appx. 595,

17   597 (9th Cir. 2019)). "The standard isn't whether our court is convinced, but instead, whether the

18   ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489,

19   494 (9th Cir. 2022) (the clear and convincing standard requires an ALJ to show his work).

20       The ALJ may consider numerous factors in weighing a plaintiff's credibility, including "(1)

21   ordinary techniques of credibility evaluation, such as the [plaintiff's] reputation for lying, prior

22   inconsistent statements concerning the symptoms, and other testimony by the [plaintiff] that

23   appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to

24   follow a prescribed course of treatment; and (3) the [plaintiff's] daily activities." *Smolen*, 80 F.3d

25   at 1284. In evaluating the credibility of symptom testimony, the ALJ must also consider the factors

26   identified in SSR 16-3P. (*Id.*) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991)).

27   Accord *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). These factors

28   include:

(1) Daily activities; (2) The location, duration, frequency, and intensity of pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3P, 2017 WL 5180304, at *7.  *See* 20 C.F.R. § 404.1529(c)(3). If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing. *Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding requirement in Social Security cases.'"  *Garrison v. Colvin,* 759 F.3d 995, 1015 (9th Cir. 2014) (*quoting Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). "A finding that a [plaintiff's] testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the [plaintiff's] testimony on permissible grounds and did not arbitrarily discredit a [plaintiff's] testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation and internal quotation marks omitted).

"The fact that a [plaintiff's] testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan v. Halter,* 260 F.3d 1044, 1049 (9th Cir. 2001).  *See* 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability solely because the objective medical evidence does not substantiate your statements."). Rather, where a plaintiff's symptom testimony is not fully substantiated by the objective medical record, the ALJ must provide additional reasons for discounting the testimony. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). "The ALJ must specify what testimony is not credible and identify the evidence that undermines the [plaintiff's] complaints – '[g]eneral findings are insufficient.'" (*Id.*) (*quoting Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

However, the medical evidence "is still a relevant factor in determining the severity of the

1    [plaintiff's] pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

2    The Ninth Circuit has distinguished testimony that is "uncorroborated" by the medical evidence

3    from testimony that is "contradicted" by the medical records and concluded that contradictions with

4    the medical records, by themselves, are enough to meet the clear and convincing standard.

5    *Hairston v. Saul*, 827 Fed. Appx. 772, 773 (9th Cir. 2020) (*quoting Carmickle*, 533 F.3d at 1161).

6    **C.    Analysis**

7        The ALJ summarized Plaintiff's subjective symptom testimony from the hearing (AR 19-

8    20), as set forth above in Section I(A).  After finding that Plaintiff's impairments could reasonably

9    be expected to cause some of his alleged symptoms, the ALJ concluded that Plaintiff's statements

10   concerning the intensity, persistence, and limiting effects of his symptoms are not entirely

11   consistent with the record.  (AR 20); *see Treichler*, 775 F.3d at 1103 (noting that ALJs "routinely

12   include this [boilerplate] statement in their written findings as an introduction ... before

13   [identifying] what parts of the claimant's testimony were not credible and why.").

14       In discounting Plaintiff's testimony, the ALJ relied on the following: (1) Plaintiff's

15   statements lacked support from the objective medical evidence; (2) Plaintiff's ADLs were

16   consistent with the assessed RFC; and (3) Plaintiff's mental health impairments were

17   conservatively treated.  (AR 20-24).

18           1.    The objective medical evidence was not inconsistent with Plaintiff's

19                 testimony.

20       The ALJ considered the objective examination findings in determining that the record "only

21   partially supported Plaintiff's testimony." (Doc. 15 at 8); (AR 20) ("[T]he weight of the medical

22   evidence does not support [Plaintiff's] claims of disabling limitations to the degree alleged."). The

23   ALJ found Plaintiff's alleged history of migraines without aura does not appear to limit his ability

24   to perform work-related activity more significantly than the limitations in the assessed RFC.  (AR

25   20). The ALJ noted that in May 2018, Plaintiff stated his migraines "occur every [three] to [four]

26   months" and general examination showed Plaintiff was within normal limits, and after November

27   2018, the record was "relatively silent regarding headache complaints."  (AR 20).  However, in

28   September 2019, Plaintiff complained of a headache.  *Id.*  The ALJ observed that though Plaintiff

1    reported on July 10, 2020, that he experiences reoccurring migraines, he treats this with over-the-

2    counter Excedrin, and during an emergency room visit four days later, Plaintiff denied headache or

3    dizziness.  *Id.*  However, the ALJ also noted that in January 2021, Plaintiff reported having a

4    migraine.  *Id.*

5         The ALJ properly relied in part on two medical administrative findings—the opinions of

6    state agency psychological consultants Dr. Hawkins and Dr. McClain—in determining that

7    Plaintiff's subjective symptomology testimony was only "partially" credible.  (Doc. 15 at 7-8).

8    Further, notwithstanding Plaintiff's argument to the contrary (*see* Doc. 12 at 17-18), the ALJ

9    properly discounted Dr. Williamson's opinion in finding it only somewhat persuasive as the opinion

10   was based on a single examination and Dr. Williamson "was not familiar" with Plaintiff's mental

11   health treatment records.  (AR 23); *see Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022)

12   ("'The most important factors' that the agency considers when evaluating the persuasiveness of

13   medical opinions are 'supportability' and 'consistency.'") (quoting 20 C.F.R. § 404.1520c(a));

14   *Veronica L. v. Comm'r of Soc. Sec.*, No. 1:23-cv-00107-JR, 2024 WL 399049, at n.2 (D. Or., Feb.

15   2, 2024) ("[a]s the Ninth Circuit recently explained, [u]nder the revised regulations ... a medical

16   source's relationship with the claimant is still relevant when assessing the persuasiveness of the

17   source's opinion.").

18        Here, the undersigned concludes that the ALJ properly determined that "the weight of the

19   medical evidence *does not support* the claimant's claims of disabling limitations to the degree

20   alleged."  (AR 20) (emphasis added).  However, neither the ALJ nor Defendant in opposition to

21   Plaintiff's motion for summary judgment plausibly demonstrates that Plaintiff's testimony was

22   *inconsistent* with the objective medical evidence.  This distinction is consequential.  While a finding

23   that a claimant's subjective complaints are inconsistent with objective medical evidence can

24   (standing alone) satisfy the clear and convincing requirement for rejecting symptomology

25   testimony (*see Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998);

26   *Isis A. v. Saul*, No. 18cv01728-W-MSB, 2019 WL 3554969, at *7 (S.D. Cal. Aug. 5, 2019)), an

27   ALJ cannot reject such testimony solely because the degree of pain alleged is not supported by

28   objective medical evidence.  *Orteza v. Shalala*, 50 F.3d 748, 749–50 (9th Cir. 1995); *Bunnell*, 947

1    F.2d at 345. As an example, the record reflects that Plaintiff experienced a history of migraines

2    that may appear controlled or subside at various points throughout the relevant time period. (AR

3    20). Although the ALJ deemed Plaintiff's testimony about his symptoms and limitations due to

4    migraines "diminished" based on the medical evidence, the ALJ relies in this regard only on the

5    fact that Plaintiff was seen infrequently and was treated conservatively—not that any identified

6    testimony was inconsistent with the medical evidence. *See Garrison*, 759 F.3d at 1017 ("[I]t is

7    error to reject a [plaintiff's] testimony merely because symptoms wax and wane in the course of

8    treatment.").

9           Because, at most, the ALJ properly found that the objective medical evidence does not fully

10   support Plaintiff's symptomology testimony, this finding alone is not a sufficient reason to support

11   the ALJ's overall credibility determination; instead, the ALJ must provide additional reasons to

12   discount Plaintiff's testimony that is supported by substantial evidence. *See, e.g., Isis A*, 2019 WL

13   3554969, at *7 ("The ALJ cited to objective medical evidence consisting of … clinical findings[.]

14   When the ALJ discussed that specific evidence, he did not articulate even a single inconsistency,

15   but he stated … in various ways that the evidence did not support Plaintiff's testimony.); *Zinobia*

16   *v. Berryhill*, Case No. 2:17-cv-08427-MAA, 2019 WL 13032522, at *6 (C.D. Cal. Jan. 29, 2019)

17   ("Even assuming this reason is supported by the record … [s]tanding alone, a reason based on lack

18   of objective medical evidence is insufficient to support the assignment of little weight to a

19   [Plaintiff's] subjective symptom allegations.") (citing *inter alia Burch*, 400 F.3d at 681); *Stone v.*

20   *Berryhill*, No. 17-cv-1689-W-RNB, 2018 WL 2317549, at *1, *5 (S.D. Cal. May 17, 2018), R&R

21   adopted, 2018 WL 3327873 (S.D. Cal. July 6, 2018) (same).

22                    2.        Plaintiff's activities of daily living (ADLs) do not provide a clear and

23                              convincing reason to reject his symptomology testimony.

24          An ALJ may reject a plaintiff's subjective symptom testimony if it is inconsistent with the

25   plaintiff's activities of daily living. *Tommasetti*, 533 F.3d at 1039. There are two grounds on which

26   an ALJ may use a plaintiff's daily activities to question a plaintiff's credibility as to his subjective

27   symptoms: (1) when daily activities demonstrate the plaintiff has transferable work skills, and (2)

28   when daily activities contradict the plaintiff's testimony as to the degree of functional limitation.

*Orn*, 495 F.3d at 639.  However, "disability [plaintiffs] should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick*, 157 F.3d at 722; *see Smolen*, 80 F.3d at 1284 n.7 ("The Social Security Act does not require that [plaintiffs] be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication.").  "The mere fact that a plaintiff has carried on with certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [their] credibility[.]" *Webb*, 433 F.3d at 688 (quoting *Vertigan*, 260 F.3d at 1050).  Regarding mental health issues, "[c]ycles of improvement and debilitating symptoms are a common occurrence," and an ALJ errs by "pick[ing] out a few isolated instances of improvement over a period of months or years and [] treat[ing] them as a basis for concluding a [plaintiff] is capable of working." *Garrison*, 759 F.3d at 1017.

Here, the ALJ considered and relied on Plaintiff's reported daily activities:

> [Plaintiff] indicates in his function report that he cleans and maintains the house, feeds his animals, and cooks.  He has no problem with personal care.  He prepares simple meals, does laundry and vacuuming, and shops in stores twice a month. However, he reported difficulty with his memory, completing tasks, concentration, understanding and getting along with others.  Yet he indicated that when he goes outside, he walks, drives, rides in a car or rides a bicycle, and he can go out alone. He can pay bills, handle a savings account, and use checkbook and/or money orders.

(AR 19) (citing Exs. 2E, 5E).  The ALJ also considered the lay opinions and observations of Plaintiff's functioning as provided in the third-party function report of Plaintiff's wife:

> [Ms. Collins] stated [Plaintiff] does housework and yardwork, takes care of animals, cooks, shops, and drives; [he] likes to watch television, ride his bike, take walks, do mechanic work, handyman work and gardening; however, [Plaintiff] has short-term memory problems, has difficulty with concentrating and completing tasks, and he gets frustrated and angry with others.

(AR 22) (citing Exs. 6E, 10E).  The ALJ determined that the evidence of Plaintiff's "wide range of daily activities" show that he "can perform at least simple tasks" and are consistent with the functional limitations of the RFC.  (AR 18, 19).

1      However, in rejecting Plaintiff's testimony, the ALJ simply recited a list of ADLs from the
2  record which she believed indicates Plaintiff has a higher degree of functioning than alleged.  The
3  ALJ failed to adequately explain how Plaintiff's described ADLs conflict with his claimed
4  limitations or demonstrate an ability to function in the workplace.  Plaintiff's intermittent
5  engagement in these activities does not undermine his claim that he is unable to sustain work.  Nor
6  is the undersigned persuaded that it is inconsistent that Plaintiff at times can go outside, walk, drive,
7  ride a bicycle, and handle his personal finances while claiming he had difficulty in completing
8  tasks, focusing, and understanding in doing so.  *See Webb*, 433 F.3d at 688; *Orn*, 495 F.3d at 639
9  ("The [Act] does not require that [plaintiffs] be utterly incapacitated to be eligible for benefits.").
10  Nor does the ALJ demonstrate how Plaintiff's activities of daily living demonstrate his ability to
11  rejoin the workforce.  Activities such as watching television, personal care, or taking care of his
12  pets does not render him able to work, and the ALJ fails to show how Plaintiff's occasional
13  activities equate to transferable work skills.  *See, e.g., Wilson v. Comm'r of Soc. Sec. Admin.*, 303
14  Fed. Appx. 565, 566 (9th Cir. 2008) (finding a plaintiff's occasional driving does not render him
15  able to work); *Vertigan*, 260 F.3d at 1050 (9th Cir. 2001) (finding "only a scintilla of evidence in
16  the record to support the ALJ's finding that [plaintiff] lacked credibility about her pain and physical
17  limitations" where the ALJ relied on Plaintiff's ability to go "grocery shopping with assistance,
18  walk approximately an hour in the malls, get together with her friends, play cards, swim, watch
19  television, ... read.... [and participate in] physical therapy for six months and exercise[ ] at home.");
20  *Costa v. Berryhill*, 700 Fed. Appx. 651, 653 (9th Cir. 2017) ("The ability to accomplish daily tasks
21  irregularly does not necessarily equate with an ability to work.").  Thus, the undersigned cannot
22  ascertain which of Plaintiff's symptomology testimony the ALJ rejected based on ADL evidence,
23  or why.  *See, e.g., Isis A.*, 2019 WL 3554969, at *6 ("Because the ALJ did not identify any actual
24  inconsistency in his opinion or describe his reasoning, the Court cannot ascertain which of
25  Plaintiff's symptom and pain testimony the ALJ rejected based on the ADL evidence.") (citing *inter*
26  *alia Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).
27      For these reasons, the ALJ did not identify a specific, clear, and convincing reason for
28  discrediting Plaintiff's symptom testimony when she did not explain how those ADLs either

1    contradicted Plaintiff's testimony or equaled transferable work skills.

2         3.    Plaintiff's mental health treatment was not conservative and does not

3              provide a clear and convincing reason to reject his symptomology testimony.

4         The ALJ determined that Plaintiff's mental health treatment has "been somewhat infrequent

5    and conservative, with occasional lengthy gaps of time between appointments, and conservative

6    treatment of medication and monthly or less frequent therapy" as Plaintiff reported improved

7    symptoms with prescribed medications and had fair compliance with his medication.  (AR 21).

8    The ALJ noted that when Plaintiff was seen in October 2019, he denied problems associated with

9    anger, anxiety, and symptoms of depression were "convincingly denied."  *Id.*  The ALJ further

10   noted that a progress note from October 2020 shows that since Plaintiff started Lexapro, he has

11   been more stable and had improved symptoms, and when Plaintiff was seen in April 2021, he

12   reported his mood and panic attacks remained stable on his current medication regimen.  *Id.* (citing

13   Ex. 15F); *see* (AR 456) (progress note dated July 8, 2019, indicating Plaintiff is prescribed with

14   Seroquel and Tegretol).

15        From review of the medical record, the undersigned finds Plaintiff's treatment was not

16   conservative.  "Conservative treatment is [a] sufficient basis to discount a [plaintiff's] testimony

17   regarding severity of an impairment."  *Munoz v. Kijakazi*, No. 1:20-cv-01531-GSA, 2022 WL

18   837245, at *8 (E.D. Cal. Mar. 21, 2022) (citing *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007)).

19   Under defined circumstances, medications like those prescribed to Plaintiff here may constitute

20   "conservative" treatment.  *See Garcia v. Comm'r of Soc. Sec.*, No. 1:21-cv-00068-SAB, 2022 WL

21   2110709, at *8 (E.D. Cal. June 10, 2022) (citing cases).  However, without a clear and convincing

22   explanation by an ALJ of the relevant circumstances and considerations, the prevailing view is that

23   treatment with psychotropic medications is not "conservative." *See id.*  Accord *Mason v. Colvin,*

24   No. 1:12-cv-00584-GSA**,** 2013 WL 5278932, at *6 (E.D. Cal. Sept. 18, 2013) (treatment with anti-

25   depressants and anti-psychotic medications was not conservative); *Wilson v. Berryhill*, No. CV 17-

26   06967-AFM, 2018 WL 6321629, at *4 (C.D. Cal. July 9, 2018) ("As Plaintiff correctly points out,

27   courts have recognized that treatment involving several of these medications [including Seroquel]

28   is not 'conservative.'"); *Carden v. Colvin*, No. CV 13-3856-E**,** 2014 WL 839111, at *3 (C.D. Cal.

1  Mar. 4, 2014) (the prescription of medications such as Seroquel is generally recognized as not

2  conservative); *Odisian v. Colvin*, No. CV 12-9521-SP**,** 2013 WL 5272996, at *8 (C.D. Cal. Sept.

3  8, 2013) (treatment with psychotropic medications and sessions with a psychologist was not

4  conservative).

5         As reflected in a series of progress notes from May 29, 2019, to October 8, 2019, Plaintiff

6  engaged in psychotherapy regularly and numerous times each month during that four-month period

7  and was prescribed a medication regimen of Tegretol and Seroquel with varying adjustments in the

8  amounts of Seroquel throughout the medication treatment period.  *See* (AR 446) (order on

9  5/29/2019 to start Tegretol and Seroquel); (AR 449) (order on 6/12/2019 to continue Tegretol and

10  increase Seroquel); (AR 452) (order on 6/20/2019 to continue Tegretol and increase Seroquel);

11  (456) (order on 7/8/2019 to continue Tegretol and decrease Seroquel); (AR 459) (same); (order on

12  8/1/2019 to continue medications); (AR 476) (same).  The progress notes reveal Plaintiff's

13  compliance with medication was often "good" or "regular" with one instance of irregular

14  compliance early in the medication regimen.  *See* (AR 455, 461, 466, 471, 475, 478) (progress notes

15  indicating good medication compliance) and (AR 458, 463, 469) (progress notes indicating regular

16  medication compliance); *cf.* (AR 453) (progress note dated 6/26/2019 indicating "irregular"

17  medication compliance) and (AR 481) (progress note dated 10/8/2019 indicating "fair" medication

18  compliance but that "it makes [Plaintiff] feel like a zombie.").

19         On this record, the ALJ was incorrect in observing that Plaintiff sought mental health

20  therapy only on a "monthly or less frequent" basis.  (AR 21).  Further, the ALJ's characterization

21  of Plaintiff's mental health treatment as "somewhat infrequent and conservative" by noting in her

22  decision only a few examples where Plaintiff's symptoms were controlled from prescribed

23  medications does not constitute a clear and convincing basis to reject Plaintiff's testimony given

24  Plaintiff's regular psychotherapy visits and typically good and regular compliance with medication.

25  *See, e.g. Odisian*, 2013 WL 5272996, at *8 (treatment with psychotropic medications and sessions

26  with a psychologist was not conservative).

27         Because the ALJ did not rely on other evidence or rationale in support of her

28  characterization of Plaintiff's mental health treatment with prescription medications and

1    psychotherapy as conservative, this is not a proper basis for discounting Plaintiff's testimony.

2                                    *        *        *        *        *

3         In sum, the ALJ failed to provide clear and convincing reasons supported by substantial

4    evidence in rejecting Plaintiff's subjective symptomology testimony.  While an ALJ's error may

5    be harmless where she provides valid reasons for disbelieving a plaintiff's testimony in addition to

6    invalid reasons (*Molina*, 674 F.3d at 1115 (citing cases)), here, the ALJ provided no valid reasons

7    for rejecting Plaintiff's symptomology testimony.  Accordingly, the error is not harmless.

8         **D.      Remedy**

9         Plaintiff seeks to remand for payment of benefits or alternatively for remand of this case  to

10   the Commissioner for further proceedings.  (Doc. 12 at 21).  Defendant contends that should the

11   Court find error in the ALJ's analysis, the Court should remand for further proceedings.  (Doc. 15

12   at 11 n. 5).  "The decision whether to remand for further proceedings or simply to award benefits

13   is within the discretion of court."  *Trevizo*, 871 F.3d at 682 (*quoting Sprague v. Bowen*, 812 F.2d

14   1226, 1232 (9th Cir. 1987)).  "Remand for further administrative proceedings is appropriate if

15   enhancement of the record would be useful."  *Benecke v. Barnhart*, 379 F.3d 587, 593 (emphasis

16   omitted) (9th Cir. 2004).

17        In this case, the ALJ erred by failing to offer any clear and convincing reason supported by

18   substantial  evidence  to  reject  Plaintiff's  symptomology  testimony.   Given  these  errors,  the

19   undersigned  recommends  that  remand  for  further  proceedings  is  warranted  because  additional

20   administrative proceedings may remedy the deficiencies in the ALJ's decision noted herein.

21   **IV.    CONCLUSION, ORDER, AND RECOMMENDATIONS**

22        The Clerk of the Court is DIRECTED to randomly assign a district judge to this action.

23        For the reasons stated above, the undersigned RECOMMENDS that:

24        1.  Plaintiff's motion for summary judgment (Doc. 12) be GRANTED.

25        2.  The ALJ's decision (Doc. 10) be REVERSED.

26        3.  This matter be REMANDED pursuant to sentence four of 42 U.S.C. §405(g) for further

27              proceedings consistent with this decision.

28        4.  The Clerk of the Court be DIRECTED to enter judgment in favor of Plaintiff Jerry

1   Harriss and against Defendant Commissioner of Social Security.

2   These Findings and Recommendations will be submitted to the United States District Judge

3   assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after

4   being served with a copy of these Findings and Recommendations, a party may file written

5   objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to

6   Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave

7   of Court and good cause shown. The Court will not consider exhibits attached to the Objections,

8   but a party may refer to exhibits in the record by CM/ECF document and page number. Any pages

9   filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing

10  these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any

11  objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson*

12  *v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

13  IT IS SO ORDERED.

14  Dated:   **June 25, 2025**

15  UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28